SAN MIGUEL & CÍA., INC., Plaintiff and Appellee, *v.* FRANK SANTIAGO LAVANDERO ET AL., and FINANCIAL CREDIT CORPORATION, Defendants and the latter Appellant.

No. 49. Decided February 12, 1963.

300

*Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco, Hernán C. Pesquera,* and *Vicente Santori Coll* for appellant. *Francisco Ponsa Feliú* and *Alvaro J. Calderón, Jr.,* for appellee.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

PER CURIAM.

Certain furniture—58 units in all—sold under conditional sales contracts duly registered in the name of San Miguel & Cía., were repossessed extrajudicially by an agent of the latter without the knowledge of his principal. The agent resold them under conditional sales contracts to other persons. The latter contracts were acquired by Financial Credit Corporation and registered as provided by law.

San Miguel & Cía. brought an action against its agent, the latter's bondsmen, and against Financial Credit Corporation. The trial court sustained the complaint against all of them and ordered Financial to pay to San Miguel & Cía. $31,501.85, which was the amount of the 58 units, the contracts of which were recorded in the Registry with preference in the name of San Miguel & Cía. The agent and the bondsmen did not seek review of the judgment rendered against them for the sum of $106,277.53. The judgment ordered all the defendants to pay solidarily the sum of $15,000 as attorney's fees.

The trial court based its judgment against Financial Credit on two premises. One, that Financial Credit expressly agreed to pay to San Miguel & Cía. the amounts secured by the conditional sales contracts recorded in its name. Another, that as a matter of law Financial Credit was bound to pay them.

In support of its appeal Financial Credit alleges that the trial court "committed gross error of fact and of law in con-

cluding, without any evidence to support such conclusion, that Financial Credit Corporation admitted that San Miguel & Cía., Inc. had a preferred right over the 58 units object of the double sale and double financing; that it also accepted and admitted its liability to San Miguel & Cía., Inc. for the total amount due the latter for the 58 units; and lastly, that it contracted the obligation and agreed to pay to San Miguel & Cía., Inc. the corresponding amount."

In its ruling the trial court made the following finding of fact which was enlarged by order of September 4, 1958. It provides as follows:

"10. On or about May 15, 1952, at a meeting held between the authorized directors and officers of San Miguel & Cía. and Financial Credit Corporation, the latter recognized plaintiff's preferred right over the units object of the double sales. Financial Credit Corporation further recognized and admitted its liability to plaintiff for the total value of the credit of San Miguel & Cía. under the contracts negotiated by Frank Santiago Lavandero with San Miguel & Cía. covering the units object of double sale, and bound itself to pay the said full amount to San Miguel & Cía. In order to determine the liability thus accepted by Financial Credit Corporation, the latter and plaintiff agreed at a meeting held on the above-mentioned date to hire two accountants, one in representation of each of the two parties, to study and analyze the contracts object of double sale. Such study was made by Miguel A. León in representation of Financial Credit Corporation and Guillermo Machargo in representation of San Miguel & Cía., and according to the joint report submitted to which the court gave credit, the total amount of San Miguel's credit in the contracts in question is $34,859.10. Financial Credit Corporation assumed the obligation to pay, and agreed to pay to plaintiff, the amount shown by the joint study made by León and Machargo and it therefore owes to plaintiff the said amount of $34,859.10. As a result of Financial Credit Corporation having assumed that obligation, San Miguel & Cía. desisted from repossessing the units sold twice and agreed that Financial Credit Corporation should continue to collect the instalments from the second conditional vendees,

which Financial Credit Corporation did until the contracts were fully liquidated.

"In its motion for reconsideration assailing finding of fact No. 10, defendant Financial Credit Corporation alleges that the evidence presented does not support such finding, that is, that the evidence is insufficient to support the same. And the said defendant alleges that none of the testimonies of the witnesses, including those of plaintiff, supports the said finding. Defendant insists that the admission of plaintiff's preferred right made at the meeting held on May 15, 1952, was conditional according to plaintiff's own evidence. To that end, it insists that according to the testimony given by Marcelino San Miguel himself at that meeting, the witnesses of Financial Credit Corporation 'admitted that if the situation is as alleged by us' San Miguel unquestionably had the preferred right over the units object of double sale.

"We hold that according to the evidence presented, including the witnesses produced by Financial Credit Corp., at the request of San Miguel & Cía. a meeting was held on May 15, 1952, in the latter's offices in which representatives of San Miguel & Cía. and of Financial Credit Corp. were present. There is no controversy as to who were the persons who were present. Marcelino San Miguel explained the situation which had arisen as a result of the actions of defendant Frank Santiago Lavandero, consisting in the following facts: (1) that the latter had repossessed extrajudicially a certain number of units from the conditional vendees whose contracts had been negotiated to San Miguel; (2) that Santiago Lavandero had resold those units, also under conditional sales contracts, which had been negotiated to Financial Credit Corporation; (3) that the contracts negotiated to San Miguel & Cía. and which were in the latter's possession were registered in the conditional sales registers prior to the second contracts, involving the same units, which defendant Santiago Lavandero had negotiated to Financial Credit Corporation; (4) that San Miguel & Cía. did not authorize nor consent these actions of Frank Santiago Lavandero, and that it learned about them shortly before the meeting of May 15, 1952. At this meeting the representatives of Financial Credit Corporation alleged that they did not know of those facts, but admitted their liability to San Miguel & Cía. if the latter's allegations mentioned were actually 'authentic.' In other words,

that it was necessary to establish first whether San Miguel's allegations on the situation were true and conformed to the reality. If so, Financial Credit Corporation admitted the latter's preferred credit under its conditional sales contracts and bound itself to pay to it. By mutual agreement each of the two parties designated an accountant to analyze and study jointly all the contracts object of double-sale transactions, in order to establish the allegations made by Marcelino San Miguel and to determine accurately the value of San Miguel's credit under the contracts. As a result of this agreement San Miguel refrained from asserting its rights judicially by repossessing the equipment, and agreed that Financial Credit Corp. should continue to collect the instalments from the second vendees. The evidence of defendant Financial Credit Corporation actually established that all of these contracts were liquidated and collected in full by Financial Credit Corporation, either from the conditional vendees themselves by means of instalments paid by the latter or by charges to Frank Santiago Lavandero's reserve in possession of Financial Credit Corporation, which amounted to $19,327.09, and which was adjudicated in full to Financial Credit Corporation. The second contracts acquired from Santiago Lavandero by Financial Credit Corp. had a total value of $34,838.55,[1] which amount Financial Credit Corporation was entitled to collect from the conditional vendees under the said contracts and which, we have said, it collected in full according to its own testimony.

"The evidence shows conclusively that the 'allegations' made by San Miguel & Cía. at the meeting of May 15, 1952, were 'authentic.' It has been shown by the investigations made subsequent to that date that the allegations made by Mr. San Miguel were fully confirmed and established. In other words, the court is of the opinion, and thus finds proved, (1) that Frank Santiago Lavandero repossessed extrajudicially 58 refrigeration units from the conditional vendees under the contracts negotiated to San Miguel & Cía.; (2) that Santiago Lavandero resold those units under new conditional sales contracts and that

---

[1] The report of Sparrow, Waymouth & Co. of June 10, 1952 (Exhibit F of Financial Credit Corp.), shows a total of $35,051.11, but it is necessary to deduct from this amount the contract of Crisanto Rijos with a value of $212.56 because the first contract in the name of Julia Muñoz involving the same unit, is not included in the joint report of León and Machargo.

he negotiated or deducted the latter contracts to Financial Credit Corp.; (3) that the original contracts acquired by San Miguel and which were in his possession were registered in the corresponding conditional sales registers prior to the registration of the second contracts acquired by Financial Credit Corporation, with the exception of two cases, to wit: the contract of Julia Muñoz and that of Pablo Portalatín; (4) that neither San Miguel & Cía. nor any of its representatives, officials, or directors authorized Frank Santiago Lavandero to make the extrajudicial repossessions in question, and that the latter were made by Santiago Lavandero without the knowledge of San Miguel and intentionally concealed by Santiago Lavandero so that San Miguel would not discover them. It was precisely when San Miguel learned of these facts shortly before May 15, 1952, after making certain partial verifications, that a meeting was held on that date for the purposes and with the results stated. It having been fully established that the allegations made by San Miguel at the meeting of May 15, 1952, were correct, the court is fully convinced that Financial Credit Corporation is bound by the agreement to pay to San Miguel & Cía. the amount representing the value to San Miguel of the first contracts involving the units sold twice. We have ruled in the judgment rendered that such sum amounts to $34,859.10, as determined by the joint report of León and Machargo in representation of Financial Credit Corporation and San Miguel & Cía., respectively. But we have also held that two of the contracts of Financial Credit Corp. were registered before those of San Miguel & Co., to wit: that of Pablo Portalatín (the vendee in the contract of Financial Credit Corp. is Mario Real), and that of Julia Muñoz (the vendee in the contract of Financial Credit Corp. is Crisanto Rijos). Of these two contracts only the first is included in the joint report of León and Machargo, and the credit of San Miguel & Cía. thereunder amounting to $134.60 should be deducted from the total shown by that report. Similarly, since the evidence shows that San Miguel repossessed in 1954 the units covered by the contracts of Juan Martínez Rodríguez (San Miguel's credit, $486), Ramón Soto Valentín (San Miguel's credit, $365.80), Toll & Rivera (San Miguel's credit, $1,380), Consuelo Barroso (San Miguel's credit, $190.85), and Joaquín Torres Moreno (San Miguel's credit, $800), these amounts should also be deducted from the total shown by León and Machargo's

report. The amount due by Financial Credit Corporation to San Miguel is thus reduced to $31,501.85, and the judgment rendered should be modified accordingly."

■ Analyzing the entire evidence which the trial judge had under consideration, we conclude that the findings of fact copied above are fully supported by the evidence.

The evidence shows that a meeting was held on May 15, 1952, at which representatives of San Miguel & Cía. and Financial Credit Corporation were present. Also present were the attorneys for both entities. At the time of the hearing San Miguel, Inc. was ready to file separate complaints to repossess the units which were encumbered by the contracts recorded in its favor. It agreed with **Financial Credit Corporation** not to file those complaints as well as not to send the letters explaining the situation to the second vendees who were in possession of the units.[2] It further agreed that Financial Credit should continue to collect the instalments due by the second vendees. Financial Credit on its

---

[2] Address

> Re: International Harvester Refrigerator, Model U-95, Series 06519, Unit 18865 M9, Conditional Sales Contract No. 1849 Dated April 28, 1950, Recorded at Page 11496 of the Municipality of Bayamón, P. R.

Dear Sir:

We have learned to our surprise that the above-described equipment is in your possession.

If such information is correct, we beg to remind you that this firm is the only legitimate owner of such equipment by virtue of the conditional sales contract which is also mentioned above together with the date thereof, of which we are assignees since that same date, as it appears clearly from the corresponding public register and from the papers in our possession.

It would be mutually convenient, for pertinent purposes, if you would write us by return mail confirming or denying this information, in the understanding that if we fail to receive a negative answer from you within a week, counted as of the date hereof, we will take it for granted that such information is accurate.

Thanking you in advance for your attention to this letter, we remain.

Very truly yours ...

part agreed to pay to San Miguel the amounts secured by the contracts registered prior thereto in its favor. The only question pending determination was whether San Miguel's contracts had been registered prior to those of Financial Credit and verification of the exact amount involved.

In addition to Mr. San Miguel's testimony which evidently had to be in favor of his contention, there is other evidence which supports the trial court's determination. Witness Miguel J. Fernández, one of the directors of Financial Credit who was present at the meeting, testified as follows in answer to a question by the presiding judge:

"Hon. Judge:

"Fernández, pardon me. What he says is that it was an agreement precisely because it was mutual; what San Miguel said, what he has said, was something which was being amicably settled; that he agreed not to file the complaints, not to send the letters, not to collect the instalments but to let Financial Credit collect them. There is a mutual amicable agreement. However, what did Financial Credit Corporation promise to do in turn?

"Fernández:

"Financial Credit Corporation agreed, if the facts were such and if San Miguel had a preferred right, that Financial Credit would in that case assume that part of the preferred right of Mr. San Miguel or of San Miguel firm to which it was entitled."

The attorney for San Miguel then asked him:

"Q. When you say that Financial Credit would assume, do you mean to say that it would pay?

"A. Financial Credit.

"Q. It would pay?

"A. Financial Credit would pay.

"Q. To San Miguel?

"A. Yes, whatever . . .

"Q. It might be.

"A. Whatever it may appear later. And these were the words of our attorney at that time. After the preferred right of San Miguel firm was established, what the attorney said was absolutely correct for us."

The testimony of Miguel A. León, public accountant who at the time of the meeting was working for Sparrow, Waymouth & Co. who were the auditors of Financial Credit, reveals what occurred there. León, together with a representative of San Miguel, was instructed to make an investigation of the contracts in order to determine whether they had been preferably registered in favor of San Miguel or of Financial Credit. He testified that "the purpose of the investigation was to determine the final liability of whichever corporation was found to have made the first recording of these contracts and to pay to the other." In answer to the question, what is the meaning of "whichever corporation was found to have made the first recording would pay to the other," he answered, "At the time of the conversations Financial Credit did not know whether it was they or San Miguel & Cía. which had recorded the conditional sales." He further explained that the purpose was to determine who had recorded them first in order to determine which one should pay to the other.

That the agreement actually made was what the judge determined is further established, in addition to the testimony copied, by a letter written by Mr. Géigel on July 2, 1952, in answer to a letter of Mr. San Miguel. In that letter it is said:

"He also states (referring to the meeting of May 15) with absolute clarity that, as attorney for Financial Credit Corporation, he admitted without any reservation that if San Miguel & Cía., Inc. had recorded in its favor the conditional sales contracts prior to those deducted by Financial Credit Corporation, San Miguel & Cía., Inc. would have the preferred right granted by the Conditional Sales Act, a right which Financial Credit Corporation would not deny or challenge at all." (Exhibit 10 of plaintiff.)

Without considering whether under the law the first contract recorded has preference in a case involving facts such as the present case, see *Caribe Motors* v. *Petrilli*, 86 P.R.R.

647 (1962), the fact is that this letter discloses that this was the opinion of Financial Credit, and it may be logically inferred that it accordingly agreed to pay to San Miguel the amounts secured by the contracts recorded in its name. However, since on the day the meeting was held Financial Credit did not know for sure that the contracts in favor of San Miguel had been recorded with preference over its contracts, nor was the exact amount known, it was decided to designate two persons to investigate the matter. The only thing pending was to verify whether San Miguel had actually recorded contracts prior thereto, involving the same equipment which was encumbered in favor of Financial, and also to determine the total amount involved. If that was verified, Financial would pay to San Miguel the amount shown by the investigation. Clearly, San Miguel was not going to permit Financial to continue to collect the instalments due to it under the contracts, which it actually did, and to do nothing so that in the end Financial would only recognize a right to it.

In view of the conclusion reached as to the first error assigned, we need not consider the second error challenging the trial court's conclusion that Financial Credit was bound by law to pay to San Miguel & Cía. the amounts claimed.

As to the third error assigned, appellant should prevail in its contention that the sum of money which it is bound to pay be reduced by $5,938.44.

In its brief plaintiff alleges that it entertains doubts as to the propriety of this item, and during the hearing the attorney for defendant made reference to the foregoing as an admission by the attorney for plaintiff, and the latter acquiesced.

Appellant maintains that other amounts should be deducted from the amount determined by the trial court which Financial ought to pay to San Miguel in addition to the aforesaid item. They are specifically the following:

| "Original Vendees | Second Vendees | Balance Due San Miguel & Cía. under Original Contract |
|---|---|---|
| Flora Rivera | Lucas Rodríguez Sánchez | $ 256.00 |
| Toll y Rivera | Ernesto Santos Espada | 1,380.00 |
| Consuelo Sánchez | Mercedes Colón Vda. Negrón | 249.90 |
| Nicomedes Maisonet | Eurípides Rivera | 314.56 |
| Fructuoso Rosado Narváez | Francisco Batista Ríos | 720.00 |
| Alejandro Colón | Efraín Torres Rivera | 432.00 |
| Consuelo Barroso | Consuelo Barroso Martínez | 180.95 |
| Andrés Figueroa López | Pedro Miranda | 522.50 |
| Alfredo L. Méndez | Alfredo L. Méndez | 330.00 |
| Emiliano Rivera | Hotel Villa Borinquen | 660.00 |
| Vicente Milean Balseiro | Natividad Cesárez | 459.00 |
| Armando de Jesús | Víctor Chaparros | 329.75 |
| Juan Martínez | Plácido E. Colón | 349.65 |
| | Total | $6,184.31" |

The judgment on reconsideration of the trial court deducted from the amount awarded three of the items which appellant now maintains should be deducted, to wit: those referring to Toll & Rivera, Juan Martínez, and Consuelo Barroso.

As to the others, the evidence shows that San Miguel had knowledge of the transactions carried out by its agent late or early in March 1952, and the sales contracts financed by appellant were executed at that time. It is difficult, if not impossible, to determine accurately whether San Miguel had knowledge that its agent was at that very moment relapsing into a certain conduct which plaintiff was precisely investigating. San Miguel's only knowledge was that he had done it in the past, but not that he was doing it while it was conducting an investigation in order to determine whether he was doing it. Conceivably, the units could have been repossessed prior thereto and the agent could execute the new transaction without the knowledge of San Miguel.

Lastly, the agent credited $30,000 to San Miguel, and appellant maintains that that amount should be allocated among all of San Miguel's debt claims against its agent. This contention overlooks the fact that Financial agreed to

310

pay to San Miguel the amounts secured by the conditional sales contracts in possession of San Miguel, alleging that San Miguel had a right thereto under the law. If this was so, any payment made by the agent was to be credited to his other accounts with San Miguel.

■ Defendant challenges the imposition of interest from the filing of the complaint. It maintains that interest should be imposed only as of the date judgment was rendered. We do not agree. The sum claimed was a stated account, and in these cases interest should be imposed from the filing date of the complaint. *Martínez Fernández & Cía., S. en C.* v. *García*, 68 P.R.R. 363 (1948).

■ Considering next the award of fees, $15,000 solidarily with the other defendants, it seems that in view of all the circumstances it is excessive as respects appellant. Irrespective of the complicated and arduous suit between San Miguel and its agent, the reality is that the only existing controversy between San Miguel and Financial Credit was a question of fact: to determine whether plaintiff's allegation had been agreed at the meeting of May 15. It was a simple and clear question, without legal complications. For this reason an award of $3,500 fees is more reasonable as respects Financial.

The judgment, as modified in accordance with the opinion, will be affirmed.

